IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:95-cr-00751-UUB

UNITED STATES OF AMERICA

VS.

MARVIN GRIFFIN

      DEFENDANT.
_____/

FILED BY_____*FG*____D.C.

SEP 2 8 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MOTION FOR LEAVE OF COURT TO SUPPLEMENT
DEFENDANT'S SHOW CAUSE DKT # 180 & 181

COMES NOW DEFENDANT MARVIN GRIFFIN, proceeding in pro se,
and with the assistance of counsel, hereby moves this Honorable
Court to Show Cause by September 15th, 2020 and in support will
show the following:

September 1st, 2020 this Honorable Court issued an Order
for Defendant to Show Cause under 18 U.S.C. 3582(c)(1)(A), with
respect to underlying conditions which render an individual at
an increased risk for serious illness from COVID-19 [...].

Griffin replied to said Order but thereafter was contacted
by the Public Defenders's Office Christian Dunham, and advised
by said party that the court wanted him to assist me with filing
a supplement motion more tenured towards the court's idea of
providing the relief requested by the Defendant.

-1-

This supplemental authority ensues.

Griffin submits, in the spirit of supplemental authority, he seek leave of court to point out: The Commentary to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction of sentence under § 3582(c)(1)(A). He submits his response to Show Cause fall under at least two examples found in Application Notes l(c) and D. One, specifically, Griffin avers he is incarcerated at FCI Yazoo Prison Complex/Camp where there are not only confirmed deaths from COVID-19 [including an outbreak and the Yazoo being once labeled number one hot spot] and numerous inmate4s and staff testing positive, including more tan twenty inmates in Yazoo Llow and several in his housing unit, but also the fact that the BOP clearly has no control or concrete plan when it comes to managing the COVID-19 pandemic in its institutions.[1]

---
[1] The Sentencing Resources Counsel for the Federal Defenders Organization last week issued a blistering review of the BOP's COVID-19 response, quoting Jose Rojas, a BOP employee and Regional vice president of the American Federation of Government Employees Council of Prison Locals. " They're making the virus explode." The report identifies 19 BOP inmates " who died in BOP custody after filing and in some cases, even after being granted requests for release" and not that " at least four individuals Adrian Slarzano, Gerald Porter, Rober Hauge-Rogers, and Marie Neba have died of COVID-19 after either testing negative or after BOP erroneously pronounced them 'recovered'." It noted the Washington Post's description of prison response to COVID-19 as exemplifying "a culture of cruelty and disregard for the well-being of incarcerated people," and describe FMC Carswell, a medial facility, as a "house of horror." **SEE EXH. A.,** for more info.

See United States v. Bullock, 1:16-cr-00087-KDC. In that case, the defendant give a vivid and disturbing description and/or account of the dire circumstances which create the kind of living dangerous conditions for anyone muchless inmates, putting them at a higher risk of contracting COVID-19. [2]

Pointingly, make no mistake about it, this supplement reemphasizes this is an "Emergency Request" for compassionate release pursuant to §3582(C)(1)(A), as the flu season rapidly approaches. And to assist with family circumstances.

Moreover, like the defendant Bullock, Griffin states he is housed in an open dormitory with inmates who have been exposed to COVID-19, and because of this he cannot either social distance, provide self care, or complain. Specifically, he

---

[2]      Anecdotal evidence appears to confirm that the federal prison system has adopted a policy of infecting everyone and hoping for "herd immunity?" If so, this is a very dangerous and cynical strategy which can't end will. With "Con Air" and bus transfers in full "catch-up" mode, there has been no testing or quarantining of new arrivals, whether healthy. or formally infected, but "recovered," and no attempt to enforce CDC distancing guidelines. **SEE EXH. B** for more information.

-3-

3/
cannot practice effective social distancing and hygiene to
4/
minimize his risk of exposure to COVID-19, and the mere idea
of contracting this deadly virus after spending almost 23 years
in prison constantly cause him to fell sickening pit in his
stomach every time he hears someone sneeze or sneeze himself.

Griffin points out the staff at the facility leave and
return daily, which increases the potential to spread the virus.
More importantly, it bares noting, to add insult to injury, FCI
Yazoo complex has been designated a quarantine site for new
and;or old inmates. Bullock. Supra.

Griffin further avers, as did Bullock, that the presence
of COVID-19 -- in of iteslf -- creates an extraordinary and
compelling reasons for compassionate release in general, and
not only for inmates with preexisting conditions -- as Bullock --

---

3/
    As Griffin explained in his Emergency motion to the court dkt 175,
everyday he's crammed onto a crowded bus -- with no air condition -- with
at least 30 or 40 inmates and driven to a screening site and work detail
where he's forced to interact with staff and venders from the outside world --
many of which do bother to where a mask or respect social distancing.
4/
    The Administration, once removed all inmates to one dormitory and forced
them to double bunk. It was only after they were informed the Central Office
was visiting the institution when they opened Golf-Two and divided the camp
inmate population. Moreover, upon this inspection by the Central Office the
Administration lessened the living space but is scheduled to increase the
inmate population with more inmates as soon as the Central Office leave.
See **EXH. B.**, "here immunity" discussion.

demonstrated -- but even more so for [especially aging] African Americans (like Griffin) that study after study show not only are disproportionately impacted by the novel coronavirus but are dying at an exceptionally alarming rate.

That is to say, the fact that Griffin has a history of diabetes, hypertension, obesity, diabetes and sickle cell disease in his family [ Griffin's mother Laura, father Willie, and eldest brother Calvin all perished during his incarceration battling with theses types of illnesses] raise significant concern if unfortunately Griffin contracts COVID-19, that by the way doesn't not care what type of good health your in or your age. It bares noting, Griffin has turned 54 while in prison.

In any event, in support, Bullock relies upon the agreement of public Health experts that inmates living conditions, combined with difficulty of controlling COVID-19 in prison setting and the limited ability of inmates to take protective measure, place inmates at a special risk of infection from COVID-19. This is especially true, when the BOP -- despite study showing outside is better -- has adopted a policy that keep inmates locked inside the unit for the majority of the days and nights.

As such, the core issue of this motion for leave to supplement dkt # 180 is to point out albeit Griffin believes this Honorable Court has particularly been unfair to him throughout his incarceration and sentenced him to 30 years,

its fair to say the court did not sentence him to death, but instead 360 months. But now Griffin's life linger in the hands of BOP prison officials -- that has a statutory    duty   and obligation to protect inmates -- ~~that~~ but has breached their duty due to self interest.

Needless to say, Griffin has spent approximately 23 years of his productive life -- come this October 25th, 2020 -- in federal prison for a non-violent offense. He now moves this Honorable Court to reduce his sentence to time served and due to his now writing career expressed in his release plan to suspend his supervise release to allow him -- due to his age -- move on with his life unrestrained by further policies practices set in place monitor individuals that has shown a propensity of engaging in recidivist behavior. As noted in Griffin's release plans, the fact that he's written approximately 26 books -- 2 of which has been published -- and founded his own independent publishing company is a profound statement of "his unwavering dedication to improve himself over two decades, despite his circumstances," [should] "convince" [this Court] " that his hope in his own future -- the whole time he was incarcerated -- wasn't misplaced."

As judge Robin Rosenberg stated [ in an article out of West Palm Beach] about a defendant who had life, that she set free," I believe Mr. Potts story is one of redemption thought self improvement." And so is Griffin's.

*:.********

Secondly, and most noteworthy, Application Note 1(c) provides for certain family circumstances that may be grounds for compassionate release. U.S.S. G 1B1.13, cmt. 1(A)(i); B and (c). In support of his motion for compassionate release Griffin avers that he's been informed that his eldest sister Barbra Price is now struggling with her health and is in desperate need of his help. That she's suffering from a serious functional or cognitive impairment, and are also experiencing deteriorating physical and mental health of the aging process and diabetic issues. In addition, suffered a life threatening stroke.

Public Defender Attorney Christian Dunham, contacted by this Honorable Court and asked to contact Griffin concerning the matter, was able to speak to Griffin's niece Tosha Raab regarding the conditions of his elder sister. In an email, addressed to Griffin 9/21/20 **EXH. C.,** attached hereto, Mr. Dunham briefly explained the substance of the conversation he had with Griffin's niece and in doing so verified the debilitating conditions of his sister. Id. at. See also Application Note 1(c).

As noted above, and this Honorable Court is well aware, Griffin already lost his mother in 2017 -- due to health issues -- and was denied the opportunity to even go to her funeral. He lost his father several years prior to losing his mother due to high blood pressure, and his elder brother Calvin a couple years prior to losing his father due to diabetes. Calvin died in his sleep. Griffin also had another brother Edward Griffin to pass more

-7-

recently due to drug and alcohol addiction. Now he's faced with losing his oldest sister.

This request is particularly important to this defendant -- as explained in his release plan -- to be released in time not only to see his elder sister but also to assist her in whatever areas he can before -- God forbids -- she unfortunately pass. In addition, Griffin notes that he hasn't seen his sister in over twenty years.

Towards that end, Griffin avers -- at the very least -- that in combination with his sisters failing health [Note 1(c)[[id.at.] rehabilitation, the BOP's lack of control of COVID-19 pandemic, and the disproportionate impact COVID-19 has had on African Americans, the applicable factors in 18 U.S.C § 3553(a) support his request for compassionate release.

### CONCLUSION

Under the advice of counsel, Christian Dunham, contacted by this Honorable Court, for purpose of contacting Griffin to assist him with the issue of his request for compassionate release currently pending before this court, Griffin submits the following supplement seeking leave of court, raising the issue the    only that his presence in Miami is desperately needed in order to be a caretaker for his older sister, but his life is in danger with the BOP's mishandling of the COVID-19 pandemic not only with respect to inmates but also its staff. That is to say, with respect to the COVID-19 pandemic and whether Griffin's rehabilitation claim standing alone is enough to warrant the

relief sought, at least one district court found; "nothing could be more extraordinary and compelling than this pandemic." Rodriquez. Supra. As a threshold matter, independent of the apparent conflict between a federal statute (§3582(c)) and Guideline Commentary exposed here, and conspicuously absent from the government's discussion, there is, as a sort of elephant in the middle of the jurisprudential room, United States v. Booker, 543 U.S. 220 (2005). Haynes. Supra. Booker establishes that the Guidelines and their commentary are unquestionably not binding on the courts. And based on Booker the court can consider the pandemic -- in the BOP context of compassionate release -- BOP's failure to control the spread of the virus is a compelling reason to warrant relief. **See EXH. A & B.,** data emailed to Griffin showing the BOP has absolutely no control of COVID-19 and Griffin is particularly vulnerable in the way of the rapidly approaching flu season of becoming infected. As such, under Booker, this Court can also conclude, rehabilitation claim -- in of itself -- meet the threshold matter of extraordinary and compelling to warrant relief.

Respectfully submitted

MARVIN GRIFFIN 57836-004
YAZOO FEDERAL PRISON COMPLEX
PRISON CAMP
PO BOX 5,000
Yazoo City, MS. 39194

**CERTIFICATE OF SERVICE**

-9-

I HEREBY CERTIFY, that a true and correct copy of the

was mailed via First Class certified postage to the United States

Attorney's office Appellate Division located at 99 NE 4th Street,

Miami Florida, 33132 on this 22nd day of September 2020.

Respectfully submitted

_____

MARVIN GRIFFIN 57836-004
YAZOO FEDERAL PRISON COMPLEX
Prison Camp
PO BOX 5,000
Yazoo City, MS 39194

TRULINCS  57836004 - GRIFFIN, MARVIN - Unit: YAZ-G-A·

EXH. #5A

--------------------------------------------------------------------------

Thus, when the correction is a clarification of the law, not an amendment, a Sec 404 resentencing should consider it.

US v Hoskins, 2020 U.S.. App. LEXIS 28190 (8th Cir. Sept 4, 2020)

US v Brown, 2020 U.S. App. LEXIS 28454 (10th Cir. Sept 9, 2020)
<><>

WHEN CONGRESS PAINTS AT ALL

Hopes for any new COVID-19 stimulus package cratered last week, when the Republican-led Senate passed a "skinny" stimulus package that the Democrat-led House refused to consider.

The House version of the latest stimulus included several provisions easing compassionate release, CARES Act home confinement and elderly offender home detention. But with only 12 work days left for the House and 13 for the Senate before the election, the chances any COVID-19 (or criminal justice) legislation will pass before the election have evaporated.

What happens after the election depends on who has control of the White House and Senate after the Nov. 3 election. Meanwhile, deadlock in Washington continues.

Wall Street Journal, Second Stimulus Check Not Showing Up Soon, if Ever (Sept 11)

Politico, 2020 Congressional Calendar (Sept. 12)

HR 6800, HEROES Act
<><>

COVID-19 GRINDS ON

The Bureau of Prisons has gained nothing in the last week against COVID-19. The number of inmates sick with the virus crossed 2,000 again, standing last night at 2,033, up 4% from last week's 1,947. The number of sick staff has fallen 2%, from 643 to 631. The number of facilities with outbreaks has increased by two, from 112 to 114, representing 93% of all institutions.

The BOP has done enough COVID-19 tests as of last night to test 36% of the BOP inmate population, if the BOP were testing each inmate once (which it is definitely not doing). Twenty-five percent of all tests are positive for COVID.

The Sentencing Resources Counsel for the Federal Defenders organization last week issued a blistering review of the BOP's COVID-19 response, quoting Joe Rojas, a BOP employee and regional vice president of the American Federation of Government Employees Council of Prison Locals. "They're making the virus explode." The report identifies 19 BOP inmates who died in BOP custody after filing  and in some cases, even after being granted requests for release" and note that "at least four individuals "Adrian Slarzano, Gerald Porter, Robert Hague-Rogers, and Marie Neba  have died of COVID-19 after either testing negative or after BOP erroneously pronounced them 'recovered'." It noted the Washington Post's description of prison response to COVID-19 as exemplifying "a culture of cruelty and disregard for the well-being of incarcerated people," and described FMC Carswell, a women's medical facility, as a "house of horror."

The report observes that because of the First Step Act of 2018, inmates may file their own motions for compassionate release, but it complains that the 30-day mandatory exhaustion period before filing, "coupled with DOJ's routine opposition, prevents vulnerable defendants from obtaining critical relief." Significantly, the Report notes that "based on a survey of defense attorneys representing clients across the country, we are not aware of a single BOP-initiated motion for compassionate release based on heightened risk of severe illness from COVID-19 infection."

Things are unlikely to improve in the coming months. The Institute for Health Metrics and Education (Univ of Washington), predicts that the daily US death rate, "because of seasonality and declining vigilance of the public, will reach nearly 3,000 a day in December. Cumulative deaths expected by January 1 are 410,000." Current deaths stand at 197,000. this is 225,000 more deaths from now until the end of the year.

To make matters worse, prisons are bracing for simultaneous outbreaks of the flu and COVID-19 as the weather turns colder. "The flu regularly spreads through prisons and jails in the US for some of the same reasons that COVID-19 does," the Verge reported last week. "The facilities pack vulnerable people in close quarters, with limited access to soap or other ways to protect

TRULINCS  57836004 - GRIFFIN, MARVIN - Unit: YAZ-G-A·

--------------------------------------------------------------------------------------------------

themselves against an infectious disease. Handling a single outbreak is already a struggle in these places, which often don't do enough to protect the health of the people living in them. Now, they may have to handle two."

Flu shots are offered to older and health-compromised inmates, "but those guidelines don't mean most inmates in the US get flu shots; outbreaks regularly happen in prisons where most inmates aren't vaccinated."

In the continuing deadly game of COVID whack-a-mole, the BOP is battling major outbreaks (over 100 cases) at FDC San Diego, Big Spring, USP Leavenworth, Coleman, Petersburg Low and Victorville. Other significant infections are going on at FTC Oklahoma, Waseca, FCI Miami, Forrest City and FDC SeaTac.

A Seattle-area newspaper alleged last week that a FDC SeaTac CO came to work one day in August with a fever, spreading the virus throughout the facility before his shift ended. The paper said the FDC violated protocols of taking staff temperature before each shift, thus letting the COVID-19 into the facility. As of last night, FDC SeaTac reported 46 sick inmates.

CoreCivic, the private prison operator that runs facilities holding immigration detainees and thousands of federal prisoners, is getting grilled as well. New Mexico's congressional delegation wrote to ICE, Marshals and CoreCivic last month about conditions in Cibola County Correctional Institution, a CoreCivic immigration detention prison. CoreCivic took troublingly long to realize that it had "a massive outbreak in its facility endangering the safety of inmates, detainees, staff and the community," the delegation said, noting that the state Department of Health had to direct CoreCivic to conduct mass testing. The delegation was concerned that COs "at the Cibola facility are not wearing adequate [personal protective equipment] when escorting COVID-19 positive inmates into the local hospital."

Neither any of the agencies nor CoreCivic has responded.

Sentencing Resource Counsel for the Federal Public Community Defenders, The COVID-19 Crisis in Federal Detention (Sep 9)

The Verge, Prisons battling COVID-19 face another disease threat this fall (Sep 11)

IMHE, Model Updates for Sep 3, 2020

South Seattle Emerald, Seatac Federal Detention Center Exposed Prisoners to the Coronavirus by Allegedly Failing to Follow Coronavirus Protocols (Sep 12)

Santa Fe New Mexican, Prison's virus outbreak brings fear to rural area (Sep 12)
<><>

SHUT UP, YOUR HONOR

You'd think that when a federal judge tells you that a plea offer stinks, you could take that to the bank.

After Mohawk Harris was charged with an 18 USC 922(g) felon-in-possession, the government offered him a 70-87 months deal. At Mo's change of plea hearing, the judge   upon hearing the deal   threw the AUSA out of the courtroom, and then told Mo the federal (as opposed to the state) system "sucks" and is "really harsh." The judge advised Mo he'd get a better deal going to trial.

So Mo did, and he got hammered. Because going to trial took away his acceptance of responsibility points, he got 92 months.

Last week, the 10th Circuit sent the case back for resentencing. Everyone agreed that the judge's comments on the plea violated FRCrimP 11(c)(1). And Mo was prejudiced by it, because there was a reasonable probability he would have taken the government deal if the court had kept its mouth shut. To be sure, the district court's comments were "inappropriate. Commenting on the sentencing practices of another judge and making disparaging remarks about the federal system harms the public reputation of judicial proceedings."

US v Harrison, 2020 U.S. App. LEXIS 28621 (10th Cir Sept. 10, 2020)
<><>

LISA is not a female. In fact, she is not even a person. LISA is Legal Information Services Associates, LLC. If you want a brochure describing LISA's other services, send us an email request. We'll mail you one right away. If you want copies of any of the cases or documents we cover, send us or have your family send us $24.00. We take MasterCard, VISA, Discover, Amex,

TRULINCS  57836004 - GRIFFIN, MARVIN - Unit: YAZ-G-A·

-------------------------------------------------------------------------------------------------

checks or Paypal. We'll mail the document the same day.

For privacy, we normally omit inmates' real names from our reports if they are still locked up.

Your family may read our newsletter online at www.lisa-legalinfo.com. If you want to receive the newsletter, send a Corrlinks invitation to newsletter@lisa-legalinfo.com.

If you have a question, please send us a fresh email to newsletter@lisa-legalinfo.com. PLEASE DO NOT HIT "REPLY" TO THIS NEWSLETTER. BECAUSE WE HAVE NO ROOM IN THE EMAIL TO RESPOND, WE CANNOT ANSWER THOSE.

TRULINCS  57836004 - GRIFFIN, MARVIN - Unit: YAZ-G-A

---------------------------------------------------------------------------------------------

FROM: Legal News Inc, Federal
TO: 57836004
SUBJECT: Federal Legal News 9-17-20
DATE: 09/14/2020 01:06:16 PM

Is the Newest DOJ Strategy to Infect Everyone, and Hope for the Best? Case updates

by Derek Gilna

     Anecdotal evidence appears to confirm that the federal prison system has adopted a policy of infecting everyone and hoping for "herd immunity?" If so, this is a very dangerous and cynical strategy which can't end well. With "Con Air" and bus transfers in full  "catch-up" mode, there has been no testing or quarantining of new arrivals, whether health, or formally infected, but "recovered," and no attempt to enforce CDC distancing guidelines.
     In those institutions where CDC has taken over, like Lexington, prisoners have been advised that rather than releasing large groups of prisoners to home confinement, they will be transferred to other institutions.  Waseca is also experiencing increased infection counts, but nationwide totals are expected to remain steady or rise slightly..
     Federal prison guard unions accuse the DOJ of, " making the virus explode."
There have now been 126 reported deaths (which doesn't count the dozens that died in hospital or were belatedly released before passing), 93 of which were at higher risk of complications from COVID-19, and over 25% were seventy or older.  It does not appear that DOJ has made ONE COVID-risk  motion for compassionate release
     Nonetheless, the federal prison population is still down to 155,000, but has come at a cost of severe long-term health problems, including serious mental illness. According to one study, about 41% of adult respondents nationwide reported symptoms of clinical anxiety or depression during the third week of July 2020.. As a result of the flood of negative publicity for DOJ, during the pandemic, the public is all too familiar with the negative effects of mass incarceration in this country.
     The U.S. Supreme Court does not yet formally meet until October, but new petitions have caught our attention. Borden v. US, 19-5410, out of the Sixth Circuit, scheduled for a November 3 argument, asks whether the "use of force" clause in the ACCA encompasses crimes with a mens rea of mere recklessness. This case has attracted at least seven supportive amicus briefs, and a positive ruling will be of help to many with ACCA sentences.
     In the Fifth Circuit, in the case of US v. Franco, the court reaffirmed the general rule in a Compassionate Release(CR) motion under First Step, that a Petitioner is NOT excused from filing a written request with the warden before filing a motion in court, stating that 3582(c)(1)(A) requires the 30-day notice.  Keep in mind that you do NOT need to file BPs on a CR denial before you file in court, only on CARES Act denials, an important distinction.
     Did your defense attorney raise issues of abuse, health problems, mental health issues in your case, or in the sentencing process?  If not, it can be argued that you received inadequate representation of counsel, and include that in your 2255.  Were you advised to go to trial instead of seeking a plea to a reduced sentence, and go to trial, despite no one in your district being found not guilty in the past year-all grounds for a 2255.   Let not your heart be troubled.

Federal Legal Center, Inc., Derek A. Gilna, JD, Director,
113 McHenry Rd., #173 Buffalo Grove, Il  60089 (and Indiana)
dgilna1948@yahoo.com; "Derek Gilna's Criminal Justice Blog."

*B r h.*

TRULINCS  57836004 - GRIFFIN, MARVIN - Unit: YAZ-G-A

--------------------------------------------------------------------------------

FROM: Court, Clerk Of
TO: 57836004
SUBJECT: RE: Suplemental Motion
DATE: 09/21/2020 10:06:24 AM

*The Public Defender*
*Case Attorney contacted*

Yes just got off with Tosha. You should file a supplemental motion asking for compassionate release due to your family circumstances. Specifically, your oldest sister (insert name) has mild dementia, diabetes and recently had a stroke. She lives with her significant other (insert name) who works five days a week from 7am to 7pm, leaving your sister at home alone. Your neice, Tosha Raab, is the only other person who takes care of your sister. However, she has two 9th grade children whom she needs to supervise doing their remote learning. Tosha trys to stop by her mother's house as much as possible but is not able to check on her every day. Accordingly, your presence in Miami is needed in order to be a caretaker for your older sister while her significant other is at work..

I think if you file something to this effect, then Judge Ungaro may have enough to justify releasing you. The research I have done says that rehabilitation alone is not enough. So you need to supplement your motion and give her another reason why you need compassionate release. You should add in the motion that you already lost both of your parents while incarcerated and that this is your oldest sister who you haven't seen in 23 years etc.

Talk again later.

Christian

MARVIN GRIFFIN on 9/17/2020 3:35:40 PM wrote
Mr. Dunham, thanks for accepting my email submission. I put a letter in the mailbox to the court asking for appointment of counsel. I spoke to my sister briefly and informed her of what was going on. She's waiting on your call. However, the person I also would like for you to speak to is my niece,the daughter of ailing sister. I just got off the phone with her and informed her also of what was going on. She's expecting your call. Her number is 786-246-8363 Her name is Tosha Raab. She can explain my sisters conditions more clearer than I can. Please advise...

5/ Christian Drahonus contacted
by this Honorable Court ~~to~~
~~contact~~ and asked to contact
Griffins ~~Niece Tasha~~ concerning the matter,
was able to speek to Griffins
Niece Tasha regarding the condition of
his elder sister. In an email
addressed to Griffin 9/21/20 ex H4.
MR. Dunhan briefly explained the
substance of that conversation and
verified the debilitating conditions
of Griffins sister. Id. al. see also
Application Note 1(C).

MARVIN GRIFFIN 57836-004
YAZOO FEDERAL PRISON COMPLEX
PRISON CAMP
PO BOX 5,000
Yazoo City, MS 39194



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

7016 0910 0000 9038 4507



**LEGAL MAIL**

⇔57836-004⇔
Clerk Of Court
District Court
400 N Miami AVE
ROOM 8N09
Miami, FL 33128-7716
United States

**FEDERAL** CORRECTIONAL **COMPLEX**
P.O. BOX 5666
**YAZOO CITY, MS 39194**

THE ENCLOSED LETTER WAS PROCESSED
ON 9-28-20 THROUGH SPECIAL
MAILING PROCEDURES.

The letter has neither been opened or inspected. If
the writer raises a question or problem over which
this facility has jurisdiction, you may wish to
return the material for further information or
clarification. If the writer encloses
correspondence for forwarding to another
addressee, please return the enclosure to the above
address.

USMS INSPECTED
BY ___