UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-CR-751-UNGARO

UNITED STATES OF AMERICA,

      PLAINTIFF

v.

MARVIN GRIFFIN,

      DEFENDANT

_____/

**DEFENDANT'S AMENDED MOTION FOR COMPASSIONATE RELEASE**

Marvin Griffin, by and through his undersigned counsel, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for an order reducing his sentence based on extraordinary and compelling reasons which are his sister's medical issues requiring a caretaker and his remarkable rehabilitation. Mr. Griffin satisfies the criteria under §3582(c) (1) (A) (i), U.S.S.G. 1B1.13 and as further elaborated by BOP Program Statement 5050.50.

Defendant, Marvin Griffin, ("Griffin") has served most of the incarcerative prison sentence imposed by the Court in 1998. Presently, in accordance with Bureau of Prisons ("BOP") policies and recommendations, Griffin is set for release from incarceration on or about May 19, 2023. Moreover, Griffin has now served 275 months

1

out of his 360-month sentence. Although May 2023 is over two years away, there are compelling and immediate family circumstances requiring an immediate sentence modification to time served – namely, the caregiving needs of Griffin's 61-year-old sister, Bobbie Jean Price (aka Barbara Price). The only other available caregivers are Bobbie's daughter, Tasha Raab, and her significant other, Phillip Sherman. Ms. Raab is herself the mother of two school age children and thus, is largely unable to provide the 24-hour assistance that her mother requires. While Mr. Sherman works 12-hour shifts during the daytime at work, making him unavailable for long periods of time as well. Consequently, as the only available family caregiver, Griffin qualifies for a sentence modification under recent FSA sentence modification procedures enacted as part of 18 U.S.C. § 3582(c)(1)(A) that provide the Court with the power to modify sentences based on an "extraordinary and compelling" reason.

Recently, the District Court of Massachusetts granted a similar sentence modification where the defendant was the only available family caregiver for his ailing parent. See *United States v. Bucci*, 2019 WL 5075964 at * 1-2 (D. Mass.). Furthermore, a court here in the Southern District of Florida also granted a similar sentence modification under the family caregiver provision of the compassionate release program. See *United States v. Bartolo Hernandez,* 16-CR-20091, DE 561. (defendant was needed to care for elderly mother after the primary caretaker was himself struck ill).

Unless the Court acts, Griffin's family will not find relief as BOP predictably has denied Griffin's compassionate release request. In fact, since enactment of the Comprehensive Crime Control Act in 1984, there is not a single reported instance of a family-based sentence modification approved by BOP. This is precisely why Congress enacted the FSA reforms to empower district courts to exercise its broad discretion to determine when a low-risk prisoner's sentence should be modified to permit him to shoulder unforeseen family burdens such as those Mr. Griffin's family is now facing.

The defense hereby moves to incorporate and adopt all of the facts and arguments made by Mr. Griffin in his original *pro se* Motions for Compassionate Release filed in docket entries 154, 158, 160, 177, 181 and 186 into this Amended Motion for Compassionate Release filed by counsel. The defendant has exhausted his administrative remedies through the Bureau of Prisons as he has been constantly requesting compassionate release in one form or another since early 2020. Furthermore, the government has conceded the exhaustion requirement (DE 187:12).

## **FACTUAL BACKGROUND**

The government obtained an indictment against Marvin Griffin charging him with one count of Attempt to Possess with Intent to Distribute Cocaine under 18 U.S.C. 846 (DE 1). Griffin proceeded to a jury trial where he was convicted (DE 57). At sentencing, Griffin qualified as a career offender (PSI ¶ 21). His total offense level was **37** (PSI ¶ 23) and his guideline range was 360 to Life (PSI ¶ 66). On August 7,

1998, this Honorable Court sentenced Griffin to 360 months in the custody of the Bureau of Prisons (DE 76). Griffin has been continuously incarcerated since October 29, 1997 (DE 6 & DE 9).

Griffin was 32 years old at the time of sentencing (PSI Page 2). Today, Griffin is 54 years old. On or about August 27, 2019, Griffin filed a *pro se* Motion to Reduce sentence under the First Step Act of 2018 (DE 154). This original motion did not include any language or arguments regarding compassionate release. Subsequently, on October 1, 2019, Griffin filed a Reply to the Government's Response in Opposition to his request for a sentence reduction (DE 158), in which he included a request for compassionate release along with his request for a reduction in sentence pursuant to the First Step Act of 2018. Also on October 1, 2019 the court entered an Order (DE 159) denying the Defendant's *pro se* Motion to Reduce Sentence (DE 154) but failed to address the issue of compassionate release included in Griffin's Reply (DE 158). Griffin appealed the denial of his *pro se* Motion to Reduce Sentence to the 11th Circuit (DE 161). On or about September 8, 2020 the appellate court remanded the case back to the district court for consideration of the compassionate release claim made by Griffin (DE 180).

On September 22, 2020, Griffin sent the district court a request for appointment of counsel to assist him with his compassionate release claims (DE 184). On September 29, 2020, this Honorable Court appointed the Office of the Federal Public Defender to assist Griffin (DE 185).

4

## **FAMILY CIRCUMSTANCES**

Griffin's older sister, Bobbie Jean Price (listed as Barbara Price in the Pre-Sentence Investigation Report – PSI ¶ 48) suffers from vascular dementia and "requires supervision for safety and assistance with activities of daily life." (See Exhibit A – letter from Florida Pace Centers/Miami Jewish Health dated October 19, 2020). Miami Jewish Health provides a home health care worker for 14 hours per week (two hours per day). Vascular dementia is a decline in thinking skills caused by conditions that block or reduce blood flow to various regions of the brain, depriving them of oxygen and nutrients. (https://www.alz.org/alzheimers-dementia/what-is-dementia/types-of-dementia/vascular-dementia). Bobbie Jean Price has also suffered from strokes, which are heavily linked to patients with vascular dementia.

Bobbie Jean Price lives with her significant other, Phillip Sherman. However, Mr. Sherman is employed at Jackson Memorial Hospital and works 12-hour shifts from 7am to 7pm, leaving Ms. Price home alone for hours. Bobbie Jean Price's daughter, Tasha Raab, is a single mother of 14-year-old twins. Although, she does visit her mother and tries to assist her as much as possible, she is unable to stay with Ms. Price the entire time that Mr. Sherman is away from the home working. In that regard, Ms. Raab recently installed video cameras at her mother's residence in order to keep an eye on her from afar. Ms. Raab and Mr. Sherman are the only caretakers

available to assist with the care of Bobbie Jean Price, and they are unable to meet the demands of the required twenty-four (24) hour supervision.

The family members listed in Griffin's Pre-Sentence Investigation Report (PSI ¶ 46 & 48) are all either deceased, live in other states or are unwilling to assist with the care of Bobbie Jean Price. Griffin's mother, Laura Griffin, and two brothers (Calvin Price and Edward Griffin) are now deceased. His brother, Floyd Griffin, and sister, Michelle Griffin, both reside in Georgia. While his youngest sibling, Toinette Renfroe, although residing in the Miami area, is not involved with the family and is not willing to assist with the care of Bobbie Jean Price.

Bobbie Jean Price resides at 5821 NW 7th Avenue, Apt 105, Miami, Florida. If released to care for her, Griffin would reside at the family home located at 7947 NW 11th Avenue, Miami, Florida. According to google maps, the distance between residences is only 1.7 miles – a six-minute drive by car or a thirty-four minute walk on foot. Thus, Griffin will easily be able to travel between residences and care for his ailing sister during the hours that Mr. Sherman is working. In turn, Griffin's new role as a caretaker will alleviate the dangers currently present when Bobbie Jean Price is left alone at home.

## **LEGAL ARGUMENT**

As part of the First Step Act, signed into law on December 21, 2018, Congress overhauled the sentence modification procedures codified at 18 U.S.C. § 3582(c) (1) (A). Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the change in law, the power

6

to seek sentence modification resided exclusively with the Director of the Bureau of Prisons ("BOP"), who exercised it rarely and, often, delinquently. See U.S. Dep't of Justice Office of the Inspector General, the Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013). Sentence modifications based on family circumstances simply did not happen under the BOP's program administration.

The BOP considers modification requests under a multi-tiered and restrictive set of rules set down in a "policy statement." The BOP Policy Statement is intended to implement the applicable Code of Federal Regulations (28 U.S.C. 571 .60, et seq.), which, in turn, is intended to implement Section 3582(c) (1) (A). P.S. 5050.50, the current iteration of the BOP's sentence modification rule, considers two classes of applications based upon family circumstances: (i) death or incapacitation of a spouse who is the primary caregiver to the prisoner's minor children or (ii) incapacitation of a spouse with no other available caregiver. Not a single instance of family-based modifications appears in nationwide reporters since enactment of the Comprehensive Crime Control Act in 1984.

In an effort to redress this prior wrong and liberalize Section 3582(c) practice, Congress freed district courts of BOP-imposed boundaries and granted courts broad discretion to determine when a low-risk prisoner's sentence should be modified based on compelling family circumstances. Section 3582(c)(1)(A)(i) provides, in pertinent part, that a court may reduce the sentence of an inmate upon the motion of the BOP or the inmate "after considering the factors set forth in section 3553(a) to the extent

7

they are applicable," if the court finds that "extraordinary and compelling reasons warrant such a reduction."

The meaning of "extraordinary and compelling" is not defined by the FSA; however several district courts have looked to the pre-FSA Sentencing Commission's policy statement for "helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive." *Bucci*, at *1; see also United States v. Fox, 2019 WL 3046086, at *3 (D. Me.) (same). The Policy Statement issued by the United States Sentencing Commission, § 1 B 1.13 of the Sentencing Guidelines, ("Guideline Policy Statement"), was last amended in November 2018, before the First Step Act was passed. The Guideline Policy Statement describes the following germane ways in which "extraordinary and compelling circumstances" may arise: (a) the death or incapacitation of the caregiver of the defendant's minor child or minor children; (b) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner; or (c) an extraordinary or compelling reason other than or in combination with one of the enumerated reasons. See U.S.S.G. § 1 B 1.13, n.1. The Policy Statement also acknowledges that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" to a sentence. Id., n. 4.

Griffin's request concerns a family circumstance that is similar to the enumerated situations that qualify under the Policy Statement. As the district court

explained in *Bucci*, "Mr. Bucci is the only available caregiver for an ailing, close member of his family: his mother. This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse." *Bucci* at *2. The *Bucci* Court then granted the defendant compassionate release effectively commuting the last 31 months of the defendant's sentence.

In *United States v. Bartolo Hernandez,* 16-CR-20091 (DE 561), the district court granted compassionate release, under the family circumstances provision, after the defendant had served approximately 27 months out of a 46-month sentence. In that case, the defendant was the only available caretaker for his 84-year old mother suffering from degenerative ocular disease and cancer. The district court reduced his sentence to time served and ordered him to remain in his mother's home on home confinement for one year and to be subject to voice monitoring by the United States Probation Office.

As in *Bucci* and *Hernandez*, here, the distinction between the types of family circumstances Griffin asks to address and the type of family circumstances listed in the Policy Statement is narrow, making it precisely the manner of request Section D was intended to address. By exerting its authority to cover senior family obligations, the Court would become only the most recent institution to observe that a very sick sibling, a very sick young child and a very sick spouse are similarly dependent on others for care. The social tie between siblings is similar to that between parent and child and that between married couples. Therefore, extending compassionate release

9

only in cases involving offspring or spouses is inconsistent with the Sentencing Commission's reservation of "catch- all" or "catch-similar" cases. Griffin has presented "extraordinary and compelling reasons" as understood within the context of family-based circumstances warranting compassionate release. Moreover, the now rehabilitated Griffin is more than capable of taking care of his sister and providing her with the 24-hour care that she requires. Griffin is well positioned to care for his sister if the Court orders that he be placed under home confinement for the remainder of his sentence.

The final consideration is the availability of other family caregivers. This motion is not contrived to avoid punishment but is an authentic family crisis. Bobbie Jean Price requires care and the family clearly now cannot offer it. One alternative, Tasha Raab, is not suitable because she is also the primary caretaker for two minor children and lacks the time to commit to the degree of care required by someone with dementia. The other alternative, Phillip Sherman, is unavailable for long periods due to his employment obligations. Accordingly, the controlling element here is whether circumstances that are "extraordinary and compelling" if applied to a minor child or spouse are equally "extraordinary and compelling" when applied to a senior sibling. Because the court is not bound to the limited construction of "compassion" that the BOP has employed (to its own oft-publicized discredit), and because the Sentencing Guidelines, to the extent they speak to the issue at all, explicitly authorize the Court to modify sentences in unenumerated circumstances, the answer is yes. See *United*

*States v. Urkevich*, No. 8:03CR37, D.E. 179 (D. Neb. November 14, 2019) (modifying life sentence pursuant to 18 U.S.C. § 3582(c}(1)(A) for extraordinary cause unrelated to any provision of the Guideline Policy Statement based on inherent powers and on "catch-all" provision).

Not only does the court possess the authority to modify Griffin's sentence, it should exercise that authority here. While incarceration affects every prisoner's family, incarcerating Griffin beyond his home for an additional 2 years creates a greater than warranted hardship on Bobbie Jean Price and her daughter, Tasha Raab, without an offsetting advance toward any sentencing objective that may affect Griffin. Over the past twenty-plus years, Griffin has exhibited exemplary conduct in prison, having engaged in rehabilitative exercises, all as reported by prison officials where he is housed. Griffin already has incurred a severe sanction (twenty-two years in prison for a non-violent drug offense) and will face professional limitations for the remainder of his life. So although Griffin's rehabilitation alone may not convince the court to grant compassionate release, the unique family circumstances involving his sister coupled with his extraordinary rehabilitation while incarcerated do warrant a reduction in his sentence.

The government argues that Griffin remains a danger to the community if released from prison and that his criminal history weighs heavily against any reduction in his sentence. (DE 187:15). Yet the government concedes that he does not have any "disciplinary record of significance while incarcerated." (DE 187:15). The

best evidence of Griffin's future conduct if released would seem to be his most recent conduct in prison, and not his conduct from when he was a teenager over thirty years ago. Furthermore, Griffin's criminal history and status as a career offender are the exact reason he has been in prison for over twenty years. Without the career offender designation, Griffin's base offense level was **32** with a Criminal History Category **IV** for a guideline range of **168-210** months. (PSI ¶ 20 &33). Instead, due to the career offender designation, Griffin's base offense level was **37** with a Criminal History Category **VI** for a guideline range of **360-Life**. (PSI ¶ 23 &33). Thus, as of today, due to Griffin's status as a career offender, he has served **65** more months than what the top of his sentencing guidelines would have been without the career offender designation. In short, Griffin has been sufficiently punished for his crimes, is no longer a danger to the community and is sufficiently rehabilitated to be released back into the community without fear.

Compelling him to serve the remainder of his sentence at an institution when the same interval of time can be best used alleviating an unexpected hardship arising from the illness of his sister is inconsistent with the contours of compassionate release, even before Congress directed the broad expansion of that program with the recent First Step Act reforms.

For these reasons, the Defendant, Marvin Griffin, respectfully requests that the Court grant him compassionate release and modify his sentence to time served.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:   */s/ Christian Dunham*
Assistant Federal Public Defender
Florida Bar No.: 146587
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 533-4177
E-mail: christian_dunham@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on October 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 */s/ Christian Dunham*
Christian Dunham